PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CONSULTING ENGINEERS
CORPORATION,

*Plaintiff-Appellant,*

v.

No. 07-1453

GEOMETRIC LIMITED; STRUCTURE
WORKS, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(1:06-cv-00956-JCC)

Argued: January 28, 2009

Decided: March 23, 2009

Before TRAXLER, DUNCAN, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Traxler and Judge Agee joined.

## COUNSEL

**ARGUED**: Mindy Gae Farber, FARBER LEGAL, L.L.C., Rockville, Maryland, for Appellant. Kenneth Scott Leonetti, FOLEY & HOAG, L.L.P., Boston, Massachusetts; Bill C.

Berger, STETTNER & MILLER, P.C., Denver, Colorado, for Appellees. **ON BRIEF:** John J. Rigby, MCINROY & RIGBY, L.L.P., Arlington, Virginia, for Appellant. Catherine H. Wicker, FOLEY & HOAG, L.L.P., Boston, Massachusetts, for Appellee Geometric Limited; Berina Ibrisagic, STETT-NER & MILLER, P.C., Denver, Colorado, for Appellee Structure Works, LLC.

## OPINION

DUNCAN, Circuit Judge:

Consulting Engineers Corp. ("CEC") sued Structure Works, LLC ("Structure Works") and Geometric Software Solutions ("Geometric") in Virginia, asserting various tort and contract claims. Structure Works and Geometric moved to dismiss for lack of personal jurisdiction. The district court granted the motions, and CEC appealed. For the reasons that follow, we affirm.

I.

This dispute arose from a series of interactions among three companies involving a software and structural design project to be undertaken in India. Structure Works, a Colorado corporation, hired Geometric, an Indian corporation, to work on the project. CEC is a Virginia corporation with two branch offices in India. Structure Works, believing that CEC might be able to assist Geometric in India with one aspect of this project, arranged a conference call in early 2004 in which it introduced the two.

In early February 2004, CEC and Geometric entered into a non-disclosure agreement ("NDA I") in which each party agreed, among other things, not to recruit certain named employees from the other. The parties also agreed that Vir-

ginia law (except Virginia choice of law rules) would govern the agreement. J.A. 257. NDA I did not contain a forum selection clause. Geometric negotiated NDA I from India, and CEC negotiated from Virginia. The negotiations leading to the agreement consisted of four email exchanges and several phone calls. Geometric signed the agreement in India.

CEC entered into a separate non-disclosure agreement ("NDA II") with Structure Works. NDA II specified that Colorado law would govern and that Colorado would be the forum for any litigation over the agreement. J.A. 178-79. These negotiations, as well as discussions regarding the potential project, consisted of twenty-four emails (eight from Structure Works and sixteen from CEC) and several telephone calls. CEC and Structure Works each negotiated from their respective home offices in Virginia and Colorado.

In mid-February 2004, representatives from Structure Works, Geometric, and CEC held their first and only face-to-face meeting at Geometric's office in India. The negotiations concerning the potential assistance lasted from February until May 2004. In May 2004, Geometric hired CEC employee Manoj Kumar, one of the employees named in NDA I.[1] CEC had employed Kumar in one of its Indian offices. Geometric hired Kumar in India for work to be performed in India. J.A. 450. Thereafter, Structure Works elected not to pursue the software and structural design project with CEC.

Nearly two years later, in March 2006, CEC filed suit against Structure Works and Geometric in state court in Fairfax, Virginia. *See* J.A. 442. CEC alleged various tort claims against Structure Works and tort and contractual claims against Geometric.[2] All the claims stemmed from Geometric's

---

[1]NDA I actually lists "Manoj Saxena," but CEC alleges (and, for the purposes of this appeal, we take as true) that Manoj Saxena, Manoj Kumar, and Manoj Kumar Saxena are the same employee.

[2]Specifically, CEC alleged tort claims against Structure Works and Geometric for (1) tortious inference with contractual relations, prospective

hiring of Kumar. *Id.* Structure Works and Geometric removed the action to the federal district court in the Eastern District of Virginia based on the diversity of the parties. Structure Works and Geometric then each moved to dismiss for, among other reasons, lack of personal jurisdiction. The district court granted the motions, holding that it lacked general and specific personal jurisdiction over Structure Works and Geometrics.[3] CEC timely appealed only the district court's holding that it lacked specific jurisdiction over the defendants.

## II.

We review de novo a district court's dismissal for lack of personal jurisdiction, although we review for clear error any underlying factual findings. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.* ("*Carefirst*"), 334 F.3d 390, 396 (4th Cir. 2003). Where, as here, the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. *Combs v. Baker*, 886 F.2d 673, 676 (4th Cir. 1989).

## III.

In considering CEC's assertion of personal jurisdiction, we first set forth the applicable law. A federal district court may

---

business relations and/or economic advantages and (2) conspiracy to injury another in trade, business or profession. CEC also alleged claims against Geometric for (1) breach of contract; (2) conversion; and (3) violation of Virginia's Uniform Trade Secrets Act. J.A. 144-57.

[3]To establish "general jurisdiction" over a foreign corporation, the plaintiff must show that the corporation's activities in the state are "continuous and systematic," which is a more demanding standard than is necessary for establishing "specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1. *Carefirst*, 334 F.3d at 396; *see also Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132, 136 (4th Cir. 1996). We turn first to state law.

The relevant portion of Virginia's long-arm statute provides, "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(1). The exercise of personal jurisdiction is proper, then, only if the asserted cause of action "aris[es] from" the non-resident defendant's "[t]ransacting business" in Virginia. § 8.01-328.1(A)(1); *see also DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 423-24 (E.D. Va. 1996); *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 943-44 (E.D. Va. 1991). Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citing *Stover*, 84 F.3d at 135-36); *see also English & Smith v. Metzer*, 901 F.2d 36, 38 (4th Cir. 1990); *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999).

We turn next to the constitutional analysis.[4] To satisfy the

---

[4]We note that even though the purpose of Virginia's long-arm statute is to extend personal jurisdiction to the outermost boundaries of due process, it is still "possible that a non-resident defendant's contacts with Virginia could fulfill the dictates of due process, yet escape the literal grasp of [the] long-arm statute." *DeSantis*, 949 F. Supp. at 423. Here, however, because we find that the constitutional due process requirements have not been met with regard to either of the defendants, we need not reach the issue of whether Virginia's arguably more stringent long-arm statute would have *also* denied the court personal jurisdiction.

constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quotation and citation omitted). The minimum contacts test requires the plaintiff to show that the defendant "purposefully directed his activities at the residents of the forum" and that the plaintiff's cause of action "arise[s] out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation and quotation omitted). This test is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (quotations and citations omitted). It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that "they amount to a surrogate for presence and thus render the exercise of sovereignty just." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

This court has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which "we consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted).

The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business

under the laws of the forum state. While this requirement is not susceptible of mechanical application, *see Int'l Shoe*, 326 U.S. at 319; *Kulko v. Superior Court*, 436 U.S. 84, 92 (1978), courts have considered various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment. In the business context, these factors include, but are not limited to:

- whether the defendant maintains offices or agents in the forum state, *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221 (1957);

- whether the defendant owns property in the forum state, *see Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 213 (4th Cir. 2002);

- whether the defendant reached into the forum state to solicit or initiate business, *see McGee*, 355 U.S. at 221; *Burger King*, 471 U.S. at 475-76;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state, *see Burger King*, 471 U.S. at 475-76, 481;

- whether the parties contractually agreed that the law of the forum state would govern disputes, *see Burger King*, 471 U.S. at 481-82;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, *see Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir 1985);

- the nature, quality and extent of the parties' communications about the business being transacted, *see English & Smith*, 901 F.2d at 39; and

- whether the performance of contractual duties was to occur within the forum, *see Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982).

Through an analysis of such factors, if a court finds that the defendant has availed himself of the privilege of conducting business in the forum, specific jurisdiction exists. "[B]ecause [the defendant's] activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476 (internal quotation marks omitted). If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three.

The second prong of the test for specific jurisdiction — that the plaintiff's claims arise out of the activities directed at the forum — requires that the defendant's contacts with the forum state form the basis of the suit. *See Burger King*, 471 U.S. at 472; *Heliocopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). If the plaintiff satisfies prongs one and two, prong three comes into play.

The third prong — that the exercise of personal jurisdiction be constitutionally reasonable — permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. *See Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen*, 444 U.S. at 292).

IV.

With that background in mind, we now turn to CEC's arguments that the district court erred in finding that it lacked specific personal jurisdiction over Structure Works and Geometric. We consider CEC's arguments against these entities in turn.

A.

CEC's tort claims against Structure Works are based on Structure Works' alleged conspiracy with Geometric to violate NDA I by hiring Kumar. The contacts that support CEC's assertion of jurisdiction consist of approximately four telephone conversations and twenty-four emails, eight of which were sent by Structure Works. Petr.'s Br. at 28. The substance of these communications, according to CEC, included the negotiation of NDA II and discussion of a proposal for CEC's services. *Id.* at 28-29. CEC argues that Structure Works "sought out" and "transact[ed] business with" CEC, and therefore "by its own actions . . . created a relationship with a Virginia citizen." Petr.'s Br. at 13-14; 28. CEC asserts that Structure Works "intentionally directed electronic communications into Virginia with the clear intent of transacting business there." *Id.* at 14. CEC maintains that the district court erred in holding that it lacked specific jurisdiction over Structure Works because these communications constituted the requisite minimum contacts with Virginia.[5] We disagree.

---

[5]CEC attempts to frame this case as presenting "the issue of the role of technology in personal jurisdiction." Petr.'s Br. at 9. However, the mere fact that emails, telephone calls, and faxes were employed does not, of itself, alter the minimum contacts analysis. The analysis must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state. As this court held in *ALS Scan*, "technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." *ALS Scan*, 293 F.3d at 711. The fact that the parties used technology to facilitate communications does not ease CEC's burden to make out a prima facie case for personal jurisdiction.

We look to the quality and nature of the contacts in evaluating whether they meet the minimum contacts requirement. Harking back to the factors distilled from the case law, it becomes apparent that the contacts described by CEC do not support the conclusion that Structure Works purposefully availed itself of the privilege of doing business in Virginia to an extent sufficient to justify personal jurisdiction. Structure Works did not have offices or employees in Virginia, nor did it own property there. It had no on-going business activity in Virginia. The record does not reflect any in-person contact with CEC in Virginia. Structure Works negotiated NDA II from, and signed it in, Colorado, and the agreement includes a Colorado choice-of-law and choice-of-forum clause. Any work contemplated by the discussions would have been performed in India; no formal agreement was ever reached to perform the work; and, indeed, the very activity of which CEC complains—the hiring of Kumar—took place in India. Further, because the alleged conspiracy (between two non-Virginia corporations) and alleged tortious interference with an at-will contract occurred in India, Indian law would govern under Virginia's choice of law provisions.[6]

Although CEC argues that Structure Works reached out to it in Virginia, this assertion, even when coupled with the cited communications, is not enough to overcome the factors noted above.[7] On these facts, Structure Works' contact with Virginia

---

[6]For torts, under Virginia's choice of law rules, claims are analyzed under the law governing the place of the alleged wrong. *Jones v. R.S. Jones and Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993). The place of alleged wrong is the place "where the last event necessary to make an act liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (citation and quotation omitted). Here, this "last event" would be Geometric's hiring of Kumar.

[7]It is, in fact, not free from doubt that Structure Works first contacted CEC. As CEC acknowledges, Structure Works knew of CEC because of marketing presentations CEC initiated. Because of the overwhelming weight of other factors, however, we need not resolve this question.

was simply too attenuated to justify the exercise of personal jurisdiction.

CEC also argues that jurisdiction exists based on the so-called "effects test." See *Carefirst*, 334 F.3d at 398 n.7. Under that test, the plaintiff must establish that specific jurisdiction is proper by showing that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Id.* CEC argues that because "CEC suffered its economic injury *in Virginia*," Petr.'s Br. at 25, and Structure Works allegedly intentionally aimed its conduct at Virginia, the exercise of personal jurisdiction is proper.

The effects test does not aid CEC on the facts here. As we explained in *Carefirst*, part of the effects test requires the plaintiff to establish that "the defendant expressly aimed his tortious conduct at the forum, *such that the forum can be said to be the focal point of the tortious activity*." 334 F.3d at 398 n.7 (emphasis added). CEC has failed to demonstrate that the focal point of the alleged tortious activity was Virginia. Rather, as previously noted, the focal point of the alleged tortious transaction was India: the individuals named in NDA I worked in India;[8] the only face-to-face meeting between the parties took place in India; the performance of any potential contract between the parties was to occur in India; and the alleged tortious activity took place in India. The effects test does not supplant the minimum contacts analysis, but rather informs it. As we noted in *ESAB Group*, "[a]lthough the place the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by

---

[8]As noted, although Structure Works was not a party to NDA I, CEC's bases its tort claims against Structure Works on Structure Works' alleged conspiracy with Geometric to breach of NDA I.

the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." 126 F.3d at 626.

Structure Works' contacts with the forum state were sufficiently attenuated that it would be a manifest injustice to hale it into Virginia court. The district court did not err in concluding that it lacked specific personal jurisdiction over Structure Works.[9]

B.

CEC alleges both tort and contract claims against Geometric. CEC argues that the district court erred in holding that it lacked specific jurisdiction over Geometric because Geometric (1) "initiated contact with CEC via telephone and email"; (2) "negotiated the terms of [NDA I] with CEC"; and (3) "agreed that Virginia law governed [NDA I]." Petr.'s Br. at 13.

CEC urges that the inclusion of the choice of law clause in NDA I "preemptively waives any potential challenges to Virginia's jurisdiction."[10] Petr.'s Br. at 23. This provision, however, while significant, cannot by itself carry the weight CEC would assign to it. The inclusion of a choice of law clause is one factor that a court may take into account in determining whether the exercise of personal jurisdiction is justified, but it is no more than that. *Burger King*, 471 U.S. at 482 ("[S]uch a [choice of law] provision standing alone would be insufficient to confer [personal] jurisdiction."). Indeed, CEC appears

---

[9]CEC has also failed to demonstrate, as required by the second prong of the specific jurisdiction test, that the tort causes of action it asserts against Structure Works "arose from" Structure Works' contacts with Virginia. *See ALS Scan*, 293 F.3d at 712. However, because CEC has failed to satisfy the first prong of the specific jurisdiction test, we need not analyze the remaining prongs.

[10]CEC also maintains that personal jurisdiction over Geometric is justified based on the "effects test." As explained above, that test is inapposite on the facts here.

to recognize as much. In an earlier pleading, CEC acknowledged that such a clause is "not dispositive of a personal jurisdiction question."[11] J.A. 466. The jurisdictional inquiry remains centered on the extent, nature, and quality of Geometric's contacts with Virginia. *See Burger King*, 471 U.S. at 481-82; *see also Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997). Here, the communication between Geometric and CEC consisted of an exchange of four brief emails, several telephone conversations about NDA I, and the exchange of the various drafts. Even when considered together with the choice of law provision, the contacts described do not make out a prima facie showing of a sufficient jurisdictional basis to survive challenge. Geometric is based in, and negotiated solely from, India. Geometric owns no property in Virginia. None of Geometric's employees work in Virginia; none have ever even traveled to Virginia. Although CEC contended that Geometric "initiated" contact with it in Virginia, the record does not support this assertion. The record reflects, and indeed CEC does not dispute, that the two parties were first introduced on a joint conference call with Structure Works.

Geometric engaged in no on-going business activities in Virginia, and the only in-person meeting among the parties occurred in India. If the parties had consummated their agreement to work together, the work would have been performed in India. Again, the activity of which CEC complains — the hiring of Kumar in alleged violation of NDA I — took place in India. The alleged conspiracy and interference with an at-will contract occurred outside of Virginia, involving an

---

[11]We note in passing that a valid *forum* selection clause, unlike a choice of law clause, may act as a waiver to objections to personal jurisdiction. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court[.]"); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). Here, NDA I contained no forum selection clause.

alleged plan between two non-Virginia corporations to hire an employee working in India. Considering all the factors here, and despite the choice of law clause in NDA I, we conclude that the district court did not err in holding that Geometric's contacts with Virginia were too attenuated to support specific personal jurisdiction.[12]

V.

Because CEC failed to demonstrate that Structure Works and Geometric had sufficient contacts with Virginia to satisfy the due process minimum contacts requirement, the district court's holding that it lacked specific personal jurisdiction over the defendants is

*AFFIRMED*.

---

[12]The third prong of the specific jurisdiction test also likely weighs against exercising personal jurisdiction over Geometric, an Indian corporation. As the Supreme Court has explained, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 114 (1987); *see also Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Because CEC has failed to satisfy the first prong of the specific jurisdiction test, a detailed analysis of this third prong is unnecessary.