RED HILL RANCH, LLC, and
Amy Dobranski, Plaintiffs,

v.

OLD SOUTH CARRIAGE COMPANY,
INC., Wammock Milling Company,
Inc., Gary Wammock, and David J.C.
Compton, Defendants.

Civil Action No.: 2:15–cv–2982–RMG

United States District Court,
D. South Carolina, Charleston Division.

Signed 10/20/2015

Wesley D. Few, Wesley D. Few LLC, Columbia, SC, for Plaintiffs.

John Keith Blincow, Jr., John Darden Griffin, Blincow Griffin, Richard S. Dukes, Jr., Turner Padget Graham and Laney, Charleston, SC, for Defendants.

## ORDER

Richard Mark Gergel, United States District Court Judge

This matter is before the court on Defendants Gary Wammock's and Wammock Milling Company, Inc.'s motion to dismiss (Dkt. No. 18). For the reasons below, the motion is granted.

### Background

Plaintiffs Amy Dobranski and Red Hill Ranch, LLC developed a low-starch grain-free horse feed in 2007 and began labelling

it as Keep Pace in May 2008. In 2011, Plaintiffs entered into an agreement with Quail Ridge Milling, Inc., a Georgia corporation located in Screven County, Georgia, to produce batches of Keep Pace. Pursuant to the agreement, a Quail Ridge representative signed a confidentiality agreement that obligated the company to "maintain the Keep Pace product information confidential and not to share it with others or otherwise use it for any purposes other than as specifically requested by Plaintiffs." Plaintiffs ended their relationship with Quail Ridge, and Quail Ridge filed for bankruptcy in August 2011. (Dkt. No. 1 at 4–5)

For a period of time, Plaintiffs sold Keep Pace to Defendant Old South Carriage Company, Inc., a company that provides horse-drawn carriage tours of Charleston. Old South stopped purchasing Keep Pace from Plaintiffs, and in 2015, Plaintiffs discovered that Old South was purchasing its horse feed from Defendant Wammock Milling Company, Inc. Wammock Milling named its horse feed "Carriage Company."

Plaintiffs allege that Wammock Milling is the successor in interest to Quail Ridge. (Dkt. No. 1 at 3). It further alleges that Wammock Milling knew or should have known that it was in possession of the Keep Pace formula based on conversations between Plaintiffs and Wammock Milling representatives that took place in 2011 and 2012. (Dkt. No. 1 at 7).

Plaintiffs allege that Carriage Company's composition and labelling has been copied from Keep Pace. They also allege that the Carriage Company product "includes additional ingredients not listed on the label." They allege—on information and belief—that Wammock Milling has not performed any "scientific analysis to support their claim of a Guaranteed Analysis of the contents of their Carriage Company

product[,] . . . but have instead simply copied it from the Plaintiff[s'] product label." (Dkt. No. 1 at 6).

On July 29, 2015, Plaintiffs filed a complaint alleging eleven separate causes of action against Defendants. (Dkt. No. 1). And on September 11, 2015, Defendants Gary Wammock and Wammock Milling (the "Wammock Defendants") filed this motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 18).

### Rule 12(b)(2)—Motion to Dismiss for Lack of Personal Jurisdiction

 When a court's personal jurisdiction is challenged, the burden is on the plaintiff to establish that grounds for personal jurisdiction exist. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). When, as here, the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of sufficient jurisdictional basis," and the court must construe relevant allegations in favor of the plaintiff. Id. "In deciding whether a plaintiff has proven a prima facie case of personal jurisdiction, a court may consider all parties' pleadings, affidavits, and other supporting documents presented to the court." Sonoco Products Co. v. ACE INA Ins., 877 F.Supp.2d 398, 404 (D.S.C. 2012) (internal quotation marks omitted). "Once a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position." Vision Motor Cars, Inc. v. Valor Motor Co., 981 F.Supp.2d 464, 468 (M.D.N.C. 2013).

 Plaintiff asserts claims against the Wammock Defendants for Lanham Act violations, Copyright Act violations, and South Carolina state law violations. Neither the Lanham Act nor the Copyright

Act provides for nationwide service of process,[1] and the Wammock Defendants reside in Georgia. When federal claims do not provide for nationwide service of process and defendants do not reside within the forum state, the Court must generally determine (1) whether the forum state's long-arm statute authorizes personal jurisdiction, and (2) if such authorization exists, whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 (4th Cir. 2009). South Carolina has interpreted its long-arm statute to be coextensive with the due process clause. Cockrell v. Hillerich & Bradsby Co., 363 S.C. 485,611 S.E.2d 505, 508 (2005). Accordingly, the sole question becomes whether the exercise of personal jurisdiction would violate due process.[2]

The Fourth Circuit has outlined three factors district courts should consider to determine whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

To determine whether a defendant purposefully availed himself of the forum state, courts look at a variety of factors, including (a) whether the defendant maintains offices or agents in a foreign state; (b) whether the defendant owns property in the forum state; (c) whether the defendant reached into the forum state to solicit or initiate business; (d) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (e) whether the parties contractually agreed that the law of the forum state would govern disputes; (f) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (g) the nature, quality, and extent of the parties' communications about the business being transacted; and (h) whether the performance of contractual duties was to occur within the forum state. Id. (collecting cases). The inquiry stops if the court determines that the defendant does not satisfy the first prong. Id.

The Wammock Defendants assert that they "have no connection to South Carolina that would support the exercise of jurisdiction over them." (Dkt. No. 18). This Court agrees.

Plaintiffs' complaint alleges, "on information and belief," that (1) "Old South has been ordering and receiving from Wammock," and (2) that "the Carriage Company product [is] being produced by Wammock in Georgia for use by and sale to Old South and others in South Carolina." (Dkt. No. 1 at 6). Although the complaint does not explicitly make the assertion, these allegations are susceptible to the interpretation that Wammock Milling reached

---

1. be2 LLC v. Ivanov, 642 F.3d 555, 558 (7th Cir. 2011) ("The Lanham Act does not authorize nationwide service of process ...."); Fort Knox Music Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000) ("The Copyright Act, 17 U.S.C. § 101 et seq., does not provide for nationwide service of process.").

2. Because Plaintiffs do not assert general personal jurisdiction, (Dkt. No. 23 at 3) this order addresses only specific personal jurisdiction.

across state lines to make its sales. In addition, Plaintiffs alleged that the Wammock Defendants were Quail Ridge's successor in interest. (Dkt. No. 1 at 3).

In their 12(b)(2) motion and the accompanying affidavits, the Wammock Defendants countered the allegations of interstate shipping and sales in South Carolina with the following assertions:

- Wammock Milling is a feed manufacturer based in Georgia. (Dkt. No. 1 at 3).

- Wammock Milling does not conduct business in South Carolina, and it does not advertise, offer for sale, or sell its products in South Carolina. (Dkt. No. 18–1 at 3).

- It does not own property in South Carolina, and it does not employ anyone in South Carolina.(Dkt. No. 18–1 at 3)

- Wammock Milling began producing horse feed for Old South after Old South's principal made an unsolicited call to enquire about whether Wammock Milling could produce a particular type of feed. (Dkt. No. 18–1 at 2)

- No one from Wammock Milling travelled to South Carolina to aid sales to Old South or for any other purpose. (Dkt No. 18–1 at 2).

- Wammock Milling does not ship its product anywhere. (Dkt. No. 18–1 at 3).

- Wammock Milling's product is available for sale only in Sylvania, Georgia, and someone from Old South travels to Sylvania, Georgia, to pick up the product. (Dkt. No. 18–1 at 3)

- Wammock Milling is not in any sort of a contractual relationship with Quail Ridge, Red Hill Ranch, or Amy Dobranski. (Dkt. No. 18–1 at 3).

- Gary Wammock resides in Sylvania, Georgia, does not do any business or own any property in South Carolina, and does not have any contracts with Quail Ridge, Red Hill Ranch, or Amy Dobranski. (Dkt. No. 18–1 at 3).

Plaintiffs' rebuttals to these assertions are insufficient to meet the burden to establish personal jurisdiction. Plaintiffs first argue that the Wammock Defendants' copying of the Keep Pace label provides some support for minimum contacts. They suggest that this is evidence the "[Wammock Defendants] were about to engage in a new collaborative venture with a South Carolina company." (Dkt. No. 23 at 6). This conclusion is pure conjecture. And even if the Wammock Defendants did copy the label, it would not provide any support for their purposeful availment of the laws of South Carolina.

Second, Plaintiffs argue that "Paragraph 21 of the Complaint standing alone establishes that the Wammock Defendants' actions are subject to jurisdiction in South Carolina." (Dkt. No. 23 at 8). Paragraph 21 of the Complaint makes the conclusory statement that "[Wammock Milling] has been producing horse feed for the Defendant Old South using the Plaintiffs' proprietary formula." But even if this assertion were true, the Plaintiffs would still need to establish some purposeful availment of South Carolina and its laws. Standing alone, Paragraph 21 fails to do so.

Third, Plaintiffs argue that Old South's "continuous orders of the Carriage Company horse feed [are alone] more than enough to support a finding of personal jurisdiction." (Dkt. No. 23 at 8). To support this assertion, it cites Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 216 (4th Cir. 2001), and Clark v. Key, 304 S.C. 497, 405 S.E.2d 599, 600 (1991). However, each of

these cases is distinguishable from the facts before the Court.

In Nolan, the out-of-state defendants reached out to a forum state resident to design their website, which was also located and maintained in the forum state. 259 F.3d at 216. In addition, the Nolan defendants consistently sent information to the forum state resident for use on the website. And in Clark, the out-of-state defendant solicited business from a forum state resident. Here, Plaintiffs have failed to counter Defendants' assertions that they did not solicit Old South's business.

Fourth, Plaintiffs also argue that the Wammock Defendants have purposefully availed themselves to South Carolina's regulations governing commercial feed by "purposefully direct[ing] their activities at the state." This statement is conclusory and appears to be contradicted by both the Wammock Defendants' and Plaintiffs' own affidavits. Plaintiffs' response to the motion states that Wammock Milling is "selling the Carriage Company feed in South Carolina." (Dkt. No. 23 at 10). But the Defendants' affidavits state that Wammock Milling does not sell its feed in South Carolina and that an Old South representative travels to Georgia to pick up the feed. (Dkt. Nos. 18–2, 18–3, 18–4). Because Plaintiffs fail to counter this assertion with more than a conclusory statement, the Court will not credit this allegation. See Vision Motor Cars, Inc. v. Valor Motor Co., 981 F.Supp.2d 464, 468 (M.D.N.C. 2013).

Finally, Plaintiff Amy Dobranski visited the Wammock Milling store in May 2015 and "asked about a low starch feed." (Dkt. No. 23–1 at 4). A Wammock Milling employee represented that it would ship Carriage Horse feed to South Carolina if it were ordered in bulk. Id. Plaintiffs argue that these facts alone are sufficient to establish personal jurisdiction. But if this were the case, all that would be necessary to establish personal jurisdiction over a company would be to ask an employee whether they would ship goods to the desired forum if an order were to be place and receive an answer in the affirmative. Not only does this fail to establish purposeful availment, but it also "offend[s] traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted).

Because Plaintiffs fail to establish that the Wammock Defendants have purposefully availed themselves of the forum state, the Court need not address whether Plaintiffs' claims arise out of those activities directed at the state or whether the exercise of personal jurisdiction would be constitutionally reasonable.

### Conclusion

For the aforementioned reasons, this Court **GRANTS** Wammock Milling Company, Inc.'s and Gary Wammock's motion to dismiss (Dkt. No. 18), and dismisses them from this action without prejudice. Because the Court finds that it lacks personal jurisdiction over the Wammock Defendants, it has no need to reach their alternative grounds for dismissal under Rule 12(b)(6).

**AND IT IS SO ORDERED.**