COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:  Judges Huff, Athey and White
Argued at Salem, Virginia


KATHERINE LOUISE CARTER,
  EXECUTOR OF THE ESTATE OF
  WORTH HARRIS CARTER, JR., DECEASED
                                                              OPINION BY
v.        Record No. 0309-22-3              JUDGE KIMBERLEY SLAYTON WHITE
                                                             MARCH 7, 2023
WAKE FOREST UNIVERSITY BAPTIST
  MEDICAL CENTER AND WAKE FOREST
  UNIVERSITY HEALTH SCIENCES


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Monica T. Monday (David R. Berry; James W. Haskins; Scott C.
Wall; Gentry Locke; Young, Haskins, Mann, Gregory & Wall, P.C.,
on briefs), for appellant.

S. Virginia Bondurant Price (Nicholas J. Giles; Alicia M. Penn;
Matthew E. Kelley; McGuireWoods LLP; Frith Anderson & Peake,
on briefs), for appellees.


Appellant Katherine Louise Carter challenges the circuit court's dismissal of appellees

Wake Forest University Baptist Medical Center and Wake Forest University Health Sciences for

lack of personal jurisdiction.  Finding appellees' contacts with Virginia insufficient under the

Due Process Clause of the Fourteenth Amendment, we affirm.

BACKGROUND

In early 2016, Worth Carter ("Mr. Carter") sought treatment from a Virginia

dermatologist, Dr. Judith M. Szulecki, for a rash and infection affecting his groin area.

Following approximately six months of treatment with no resolution, Mr. Carter's primary care

physician referred Mr. Carter to Wake Forest University Baptist Medical Center ("WFUBMC") in Winston-Salem, North Carolina.

On June 24, 2016, Mr. Carter first visited Dr. Kevin P. High, a North Carolina doctor employed by Wake Forest University Health Sciences ("WFUHS") located at WFUBMC (collectively "Wake Forest"), regarding the rash and infection affecting his groin area. Nearly a week later, Katherine Louise Carter ("Ms. Carter"), Mr. Carter's daughter, contacted Dr. High requesting updates on her father's condition. Dr. High responded to her inquiry and offered suggestions regarding pain relief. In response, Ms. Carter asked for a prescription to be sent to their local pharmacy in Virginia. These contacts were made through an online patient portal, myWakeHealth.

In early July, Ms. Carter contacted Dr. High, again using the myWakeHealth portal, further updating Dr. High on Mr. Carter's worsening condition. In response, Dr. High responded that the worsening condition may, in fact, result from congestive heart failure. Thereafter, Mr. Carter sought treatment for congestive heart failure at Johns Hopkins Hospital. Upon discharge, Mr. Carter was referred back to Wake Forest, for the same condition affecting his groin area.

Mr. Carter visited Dr. Steven R. Feldman, a dermatologist at Wake Forest, on five separate occasions between August of 2016 and December of 2016. In addition to these visits, Mr. Carter and his daughter communicated with Dr. Feldman by initiating telephone conversations and text messages regarding his condition, follow-up treatment, and prescriptions.

On August 26, 2016, Mr. Carter saw Dr. William Brown Applegate at Wake Forest who, upon examination of Mr. Carter, made an assessment that he needed constant care and forwarded this information to Dr. Feldman. Because of the continuing condition affecting Mr. Carter's groin area, Dr. Applegate referred Mr. Carter to Dr. Lucian G. Vlad, a wound care specialist,

also located at Wake Forest. Mr. Carter first visited Dr. Vlad on September 22, 2016, and Mr. Carter would visit Dr. Vlad an additional ten times between September 2016 and February 2017. During this time, Mr. Carter and his daughter initiated phone calls to Dr. Vlad and communicated with him through the patient portal regarding Mr. Carter's condition and treatment options.

In January of 2017, Mr. Carter was hospitalized in Virginia. Ms. Carter contacted Dr. Vlad regarding her father's condition. In response, Dr. Vlad suggested Mr. Carter obtain a biopsy while he was hospitalized. Ms. Carter later informed Dr. Vlad that a biopsy could not be obtained in Virginia for months without a referral to another dermatologist. In response, Dr. Vlad made clear he did not want Mr. Carter seeing another dermatologist and that a biopsy could be obtained in North Carolina during Mr. Carter's next visit.

Mr. Carter obtained a biopsy at Wake Forest on February 27, 2017. Following the biopsy, Mr. Carter returned to Wake Forest for additional MRI, CT, and bone scans. The tests revealed that Mr. Carter suffered from metastatic cancer. Mr. Carter passed away on April 7, 2017.

On March 8, 2019, Ms. Carter, as executor of Mr. Carter's estate, filed suit in the Circuit Court of the City of Martinsville against Wake Forest and four North Carolina doctors—Dr. High, Dr. Feldman, Dr. Applegate, and Dr. Vlad (collectively "the North Carolina doctors")—in addition to Mr. Carter's Virginia dermatologist, Dr. Szulecki. The summons and complaint were served on WFUBMC's registered agent in Virginia.[1] WFUHS and the North Carolina doctors were served through the Secretary of the Commonwealth.

---

[1] Wake Forest University Baptist Medical Center secured authorization to transact business in Virginia on March 7, 2017.

Wake Forest and the North Carolina doctors moved, by special appearance, to dismiss for lack of personal jurisdiction on May 3, 2019.  On September 18, 2019, pursuant to Code § 8.01-277.1(B)(3), the circuit court authorized jurisdictional discovery.  Subsequently, on April 28, 2020, the circuit court directed the parties to finish jurisdictional discovery by June 1, 2020.  On May 26, 2020, Ms. Carter nonsuited the four North Carolina doctors leaving only Wake Forest and Dr. Szulecki as defendants.

Wake Forest filed an amended motion to dismiss for lack of personal jurisdiction by special appearance on July 22, 2020, following the conclusion of jurisdictional discovery.  The circuit court conducted a hearing in Martinsville, Virginia, on April 27, 2021.  No live testimony was presented during the hearing.  Rather, the parties relied on their briefs and the exhibits attached thereto.  Following the hearing, the circuit court granted Wake Forest's motion to dismiss for lack of personal jurisdiction by order dated July 22, 2021.  Specifically, the circuit court found that application of Virginia's long-arm statute was not consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  In coming to that conclusion, the circuit court made the following undisputed findings of fact:

> 1.  WFUBMC is a corporation organized and existing under the laws of North Carolina with its principal place of business in Winston-Salem, North Carolina.
> 2.  WFUHS is a corporation organized and existing under the laws of North Carolina with its principal place of business in Winston-Salem, North Carolina.
> 3.  Dr. High, Dr. Feldman, Dr. Applegate, and Dr. Vlad ("North Carolina physicians") were at all pertinent times employees of WFUHS, and they saw the decedent at their offices in Winston-Salem, North Carolina.
> 4.  The decedent, who first sought medical care from WFUBMC in 1999, did not rely on any advertising or solicitation from the defendants or the North Carolina physicians.  Dr. Lewis referred the decedent to Dr. High, and the physicians at Johns Hopkins referred him to Dr. Feldman.
> 5.  None of the North Carolina physicians was licensed to practice medicine in the Commonwealth of Virginia during the relevant time period.

6. The telephone calls from Dr. Feldman and Dr. Vlad to the plaintiff while she and the decedent were in Virginia were in response to inquiries from the plaintiff.

7. The text messages that Dr. Feldman sent to the plaintiff were in response to text messages that the plaintiff had sent to him.

8. The messages that Dr. High and Dr. Vlad sent to the plaintiff on MyWakeHealth "were in response to messages initiated by her, without her stating where she was located." Amended Motion to Dismiss for Lack of Personal Jurisdiction by Special Appearance, p. 10.

9. The North Carolina physicians wrote various prescriptions and sent them electronically to the decedent's pharmacy in Rocky Mount, Virginia, at the decedent's request.

10. The North Carolina physicians sent copies of their office notes to Dr. Lewis at the decedent's request.

11. On March 7, 2017, the State Corporation Commission issued to WFUBMC a certificate of authority to transact business in the Commonwealth of Virginia.

12. On June 15, 2020, the plaintiff filed a complaint in Superior Court of Forsythe County, North Carolina, naming as defendants Baptist, WFUHS, WFUBMC, Dr. High, Dr. Feldman, Dr. Applegate, and Dr. Vlad. The lawsuit seeks compensatory damages for the wrongful death of the decedent.

Ms. Carter later filed a motion for entry of partial final judgment pursuant to Rule 1:2 on December 2, 2021. Wake Forest filed their response in opposition to Ms. Carter's motion for partial final judgment on January 6, 2022. On February 3, 2022, the circuit court entered a partial final judgment order granting Ms. Carter's motion and rendering the circuit court's July 22, 2021 order a final order as to defendant Wake Forest. As such, Ms. Carter filed this appeal on February 23, 2022.

ANALYSIS

Ms. Carter challenges the dismissal of Wake Forest for lack of personal jurisdiction. She argues that Wake Forest's contacts suffice to comport with due process therefore placing Wake Forest within the reach of Virginia's long-arm statute. In reviewing and ruling on Wake Forest's motion to dismiss by special appearance, the circuit court treated the motion like a demurrer, without objection from any party. Notwithstanding, the circuit court also allowed evidence that

had been provided in the discovery process to be presented in support and in opposition to the motion, by agreement of the parties. Nonetheless, we review "issues of statutory and constitutional interpretation under a *de novo* standard of review." *Bergaust v. Flaherty*, 57 Va. App. 423, 429 (2011) (citing *Cabaniss v. Cabaniss*, 46 Va. App. 595 (2005)).

First, we address Virginia's long-arm statute. Code § 8.01-328.1 states, in relevant part, personal jurisdiction may be exercised by "transacting any business" in the Commonwealth or by "causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Our Supreme Court has construed Code § 8.01-328.1 broadly, finding that it "is a single-act statute requiring only one transaction in Virginia to confer jurisdiction on our courts." *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319 (1999) (quoting *Nan Ya Plastics Corp. U.S.A. v. DeSantis*, 237 Va. 255, 260 (1989)). In other words, "[i]t is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *Id.* (alteration in original) (quoting *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740 (1971)). Given that Virginia's long-arm statute coincides with the limitations imposed by the Fourteenth Amendment, "[both] inquiries essentially become one." *Bergaust*, 57 Va. App. at 430 (quoting *Young v. New Haven Advoc.*, 315 F.3d 256, 261 (4th Cir. 2002)).

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. &*

*Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This "limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The primary focus of the due process inquiry is on "the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017)). As such, there are two kinds of personal jurisdiction: general and specific. *Id.*

General jurisdiction exists when a defendant is "essentially at home" in the forum state. *Id.* (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). This broader jurisdiction, in the context of corporate defendants, exists where the defendant is incorporated or has its principal place of business. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Here, general jurisdiction is inapplicable.

Specific jurisdiction, however, is entirely different. *Id.* Specific jurisdiction requires that the defendant act "by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). These acts, or contacts, cannot be "random, isolated, or fortuitous." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984). Rather, "[t]hey must show that the defendant deliberately 'reached out beyond' its home." *Ford*, 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Put differently, "'there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."'" *Id.* (alteration in original) (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

Although not binding on this Court, the United States Court of Appeals for the Fourth Circuit has helpfully organized the due process requirements of specific personal jurisdiction into

- 7 -

a three-prong test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)), *cert. denied*, 141 S. Ct. 1057 (2021).

Addressing the first prong, purposeful availment, requires the Court to determine if, and to what extent, the "defendant [has] purposefully avail[ed] himself of the privilege of conducting business under the laws of the forum state." *Id.* (second alteration in original) (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 278). "Relevant to this analysis are the *quality* and *nature* of the defendant's connections, not merely the number of contacts between the defendant and the forum state." *Id.* The following list of nonexclusive factors have been considered helpful in determining whether a defendant has purposefully availed themselves:

> (1) whether the defendant maintained offices or agents in the State;
> (2) whether the defendant maintained property in the State;
> (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Id.* (quoting *Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd.*, 911 F.3d 192, 198-99 (4th Cir. 2018) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278)).

Here, all but one of the factors are entirely absent. Wake Forest maintained no offices or agents or property in Virginia prior to litigation; did not solicit or initiate business with Mr. Carter in Virginia; did not deliberately engage in long-term business activities in Virginia;

- 8 -

had no choice of law provision; had no in-person contact in Virginia; and had no relevant, contractual duties that require performance in the state.

As for the nature, quality, and extent of the parties' communications about the business being transacted, there is scant evidence of a deliberate attempt, by Wake Forest, to purposefully avail themselves of Virginia. Ms. Carter alleges that Mr. Carter received additional, virtual treatment from Wake Forest, but the evidence bears out that this "treatment" consisted of follow-up conversations—in an online portal that acted as an in-house email server—regarding Mr. Carter's condition after the treatment he had received in person from Wake Forest in North Carolina. Moreover, the only other alleged contacts consist of phone calls and text messages regarding scheduling appointments, following up on Mr. Carter's condition, or filling prescriptions at local Virginia pharmacies. These contacts were initiated by Ms. Carter—not Wake Forest.

At the onset of the evaluation and treatment of Mr. Carter's condition, he availed himself of the North Carolina jurisdiction, not the other way around. The North Carolina physicians, as is expected and as is required, engaged in communication that constituted advice and care that amounted to follow up to the evaluation and treatment that took place in North Carolina. Rather than a case about Wake Forest reaching into Virginia, this is a case of a plaintiff reaching back into North Carolina.

To hold otherwise would impact the care that Virginians now receive from out-of-state providers. In fact, in her brief, Ms. Carter asserts that Wake Forest "could have declined his [Mr. Carter's] referral, referred him elsewhere, or insisted on in-person care" in order to avoid availing itself of personal jurisdiction in Virginia. Our ruling does not place Virginians in that quandary.

The ruling in this case is consistent with other courts concluding that follow-up care does not confer personal jurisdiction upon a non-resident physician nor upon a hospital:

> Follow up consultation ancillary to the examination and treatment made by the out-of-state doctor, telephone calls about the status of an out-of-state patient, or arrangements for a patient to continue with medication prescribed by that doctor do not reach the minimum contacts necessary for the satisfaction of due process.

*Prince v. Urban*, 57 Cal. Rptr. 2d 181, 184 (Cal. Ct. App. 1996). The same conclusion was reached in *Bradley v. Mayo Found.*, No. CIV.A. 97-204, 1999 WL 1032806, at *9 (E.D. Ky. Aug. 10, 1999),

> Writing prescriptions, sending letters confirming diagnoses previously made, and telephone consultations are routine actions taken by medical practitioners regardless of where their patients are located. Such routine actions, when incidental to treatment in the physician's home state, should not subject the physician or his employer to jurisdiction in any state in which his patient happens to reside.

Even accepting every allegation in the complaint as true, the evidence fails to establish purposeful availment: the actual treatment Mr. Carter received all occurred in North Carolina and not in Virginia; Mr. and Ms. Carter, as follow up to the out-of-state treatment, initiated contact with Wake Forest and their doctors in North Carolina from Virginia via text messages, phone calls, and the myWakeHealth portal; and Wake Forest maintained no presence in the Commonwealth of Virginia, did not solicit business, nor sought protection under its laws. Given that the facts fail to show Wake Forest purposefully availed themselves of the privilege of conducting business in Virginia, we end our inquiry.

CONCLUSION

Ms. Carter has failed to meet her burden in establishing that personal jurisdiction exists under Virginia's long-arm statute and that the exercise of such jurisdiction does not offend the

Due Process Clause of the Fourteenth Amendment.  We affirm the circuit court's decision

granting Wake Forest's motion to dismiss.

*Affirmed.*