**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-2241**

———————

UNIVERSAL LEATHER, LLC,

             Plaintiff - Appellant,

      v.

KORO AR, S.A.,

             Defendant - Appellee.

———————

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., Chief District Judge.  (1:12-cv-00604-WO-JLW)

———————

Argued:  October 29, 2014          Decided:  December 8, 2014

———————

Before MOTZ, KING, and KEENAN, Circuit Judges.

———————

Vacated and remanded by published opinion.  Judge Keenan wrote the opinion, in which Judge Motz and Judge King joined.

———————

**ARGUED:** Norman B. Smith, SMITH, JAMES, ROWLETT & COHEN, LLP, Greensboro, North Carolina, for Appellant.  Christopher Grafflin Browning, Jr., WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Garrick A. Sevilla, C. Elizabeth Hall, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee.

———————

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court erred in dismissing a civil action brought against a foreign corporation on the ground that the plaintiff failed to satisfy its prima facie burden of showing that the defendant "purposefully availed" itself of the privilege of conducting business in the forum state. Upon our review, we conclude that the plaintiff met its initial burden regarding that required element of personal jurisdiction, by submitting affidavits stating that the defendant contacted the plaintiff in the forum state, conducted repeated in-person solicitations and meetings concerning the parties' business relationship there, and engaged in numerous business transactions over a two-year period. Accordingly, we vacate the district court's judgment and remand this action for the court to complete its jurisdictional analysis.

## I.

Koro AR, S.A. (Koro) is a leather company in Argentina that purchases raw cow hides and tanning chemicals, and pays various Argentine tanneries to produce finished leather products. Between 2009 and 2011, Koro sold finished leather goods to Universal Leather, LLC (Universal), a leather wholesaler located in North Carolina. However, the parties' relationship

eventually deteriorated and, in September 2011, Universal filed a complaint against Koro in North Carolina state court, alleging breaches of contract based on late deliveries, nonpayment of certain shipping costs, impermissible price increases, and defective products.

After removing the civil action to federal district court, Koro filed a motion to dismiss for lack of personal jurisdiction. In support of its motion, Koro submitted a declaration from a company representative stating that Universal purchased about $2.85 million in leather goods from Koro by executing various purchase orders over a two-year period, but that those transactions were facilitated by another Argentine corporation that primarily communicated and bargained with Universal. In addition, the Koro declarant stated that Koro did not have any offices, property, or business operations in the United States, that Koro had never solicited nor sent agents or employees to the United States, and that Koro performed all its work in Argentina and shipped all its goods "F.O.B. Argentina," requiring Universal to accept delivery of the goods in Argentina.

Universal opposed Koro's motion to dismiss, and submitted two affidavits given by its assistant manager, Kenneth Kochekian. In those affidavits, Kochekian made several statements that conflicted with the averments in the declaration

filed by Koro.[1]  For example, Kochekian stated that between 2009 and 2011, Universal bought more than $5 million in leather goods from Koro and that, during this time frame, Universal dealt directly and exclusively with Koro.  Kochekian also stated that two Koro employees visited Universal's offices in North Carolina in April 2010 to solicit purchases of Koro's goods.  According to Kochekian, one of those individuals visited Universal's offices on at least six occasions between 2009 and 2011, engaging in "continued solicitations" and "discussions of various aspects of the purchaser and seller relationship." Kochekian averred that the same individual received "weekly e-mails" from Universal employees, and that Universal and Koro "maintained regular e-mail communications during the years that they did business."

In one affidavit, Kochekian acknowledged that Koro shipped its goods "F.O.B. Argentina."  Kochekian estimated that the various transactions between Universal and Koro resulted in over 200 shipments of goods from Argentina, at least 160 of which were sent to North Carolina and to other locations within the United States.

---

[1]  Koro's representative filed a second declaration "to correct a number of misstatements" in Kochekian's first affidavit.

In July 2013, a magistrate judge reviewed the pleadings and the parties' affidavits and declarations, and recommended that the district court dismiss Universal's action for lack of personal jurisdiction. The magistrate judge concluded that, even viewing the "[m]any" disputed facts in the record in the light most favorable to Universal, Universal had failed to make a prima facie showing of sufficient "minimum contacts" with North Carolina to establish personal jurisdiction. In support of this conclusion, the magistrate judge cited: (1) Koro's failure to enter into any contract with Universal while Koro's employees visited North Carolina; (2) Koro's performance of the parties' contracts entirely within Argentina; and (3) Koro's terms of shipment declining to assume responsibility for delivery of the goods outside Argentina.

In rejecting Universal's arguments, the magistrate judge noted that the required "minimum contacts" were not established by the Koro employees' visit to North Carolina in April 2010 or by Koro's direction of products into North Carolina, and that the parties' e-mail communications likewise were insufficient because "e-mails alone do not constitute 'minimum contacts.'" The magistrate judge also stated several facts that he considered relevant to the analysis, including that Koro did not have offices or property in North Carolina and was not exposed to taxation there, that the parties did not engage in

5

significant long-term activities in North Carolina, that none of the parties' agreements set forth any choice-of-law provisions, and that the parties primarily chose to communicate by e-mail.

In September 2013, the district court adopted the magistrate judge's recommendation. The district court concluded that any visits and in-person meetings between representatives of Koro and Universal in North Carolina "may support a finding of minimum contacts," but were not themselves "automatically sufficient" to establish personal jurisdiction. The court agreed with the magistrate judge that "regardless of any meetings that may have occurred, the balance of the factors weighed against a finding of personal jurisdiction."[2] Accordingly, the district court dismissed Universal's action, and Universal timely filed this appeal.

## II.

Universal's sole argument on appeal is that the district court erred in determining that it lacked personal jurisdiction over Koro. We review de novo a court's dismissal of an action for lack of personal jurisdiction, but we review for clear error

---

[2] The district court declined to consider a third affidavit executed by Kochekian, which Universal filed after the magistrate judge issued his recommendation. The district court concluded that the third affidavit was time-barred and, in the alternative, that the affidavit's new allegations did not materially affect the magistrate judge's conclusions. Universal does not appeal the district court's ruling on this issue.

the court's underlying factual findings. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009).

When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction. Id. In considering whether the plaintiff has met this burden, the district court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

A.

A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment. ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012). In the present case, Universal contends, and Koro does not dispute, that North Carolina authorizes long-arm jurisdiction over foreign defendants in qualifying civil actions under N.C.G.S. § 1-75.4(1)(d).

7

The North Carolina Supreme Court has held that N.C.G.S. § 1-75.4(1)(d) permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process.[3] See Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977) ("[I]t is apparent that the [North Carolina] General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."); see also Combs, 886 F.2d at 676 n.3 (same). Thus, because personal jurisdiction in the present case is asserted under N.C.G.S. § 1-75.4(1)(d), our two-prong test merges into the single question whether Universal has made a prima facie showing that Koro had sufficient contacts with North Carolina to satisfy constitutional due process. See A.R. Haire, Inc. v. St. Denis, 625 S.E.2d 894, 899 (N.C. Ct. App. 2006); see also Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012) (observing that our two-prong test

---

[3] N.C.G.S. § 1-75.4(1)(d) provides for jurisdiction "whether the claim arises within or without [North Carolina]" when the defendant "[i]s engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." The plaintiff also asserts jurisdiction under N.C.G.S. § 1-75.4(5)(e), which extends jurisdiction over civil actions relating to goods "actually received by the plaintiff in this State from the defendant through a carrier without regard to where delivery to the carrier occurred." We need not reach this alternative basis for jurisdiction because we conclude that, for the purposes of this appeal, the plaintiff met its burden of showing the existence of the "minimum contacts" required to satisfy federal due process, and thus, N.C.G.S. § 1-75.4(1)(d).

8

"collapses into a single inquiry" when a state's long-arm statute "extends personal jurisdiction to the outer bounds of due process"). Accordingly, we turn to engage in this constitutional analysis.

Under the Fourteenth Amendment's Due Process Clause, there are two paths permitting a court to assert personal jurisdiction over a nonresident defendant. The first path is "specific jurisdiction," which may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit. Tire Eng'g, 682 F.3d at 301. The second path is "general jurisdiction," which requires a "more demanding showing of continuous and systematic activities in the forum state." Id. (citation and internal quotation marks omitted). Because Universal asserts only that the district court had specific jurisdiction over Koro based on its contacts with Universal, we confine our inquiry to this type of personal jurisdiction.

We recognize that "[f]airness is the touchstone of the jurisdictional inquiry," and we employ a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process. Id. at 301-02. Under this test, we analyze: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2)

9

whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Id. at 302 (citation omitted). In the present case, the district court undertook only the first step of this analysis, and dismissed Universal's complaint on the ground that Universal failed to make a prima facie showing that Koro had purposefully availed itself of the privilege of conducting business in North Carolina. See Consulting Eng'rs, 561 F.3d at 278 (stating that a court is required to consider prongs two and three of the personal jurisdictional analysis only if the court finds that the plaintiff has met the first requirement of purposeful availment).

The purposeful availment inquiry is grounded on the traditional due process concept of "minimum contacts," which itself is based on the premise that "a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." Tire Eng'g, 682 F.3d at 301 (citation and internal quotation marks omitted); see Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945) (examining whether the defendant has "establish[ed] sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which [the defendant] has incurred

10

there"). Thus, in determining whether a foreign defendant has purposefully availed itself of the privilege of conducting business in a forum state, we ask whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989) (quoting World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

We have noted that this analysis is "flexible," and depends on a number of factors that courts consider on a case-by-case basis. Tire Eng'g, 682 F.3d at 302. In the business context, those factors include, but are not limited to, an evaluation of: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of

11

contractual duties was to occur within the forum." Consulting Eng'rs, 561 F.3d at 278 (citations omitted). We generally have concluded that a foreign defendant has purposefully availed itself of the privilege of conducting business in the forum state when the defendant "substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Tire Eng'g, 682 F.3d at 302. In contrast, we typically have found such purposeful availment lacking in cases in which "the locus of the parties' interaction was overwhelmingly abroad." Id.

B.

Universal contends that it sufficiently showed that Koro purposefully availed itself of the privilege of doing business in North Carolina. In support of its argument, Universal notes its affiant's statements that Koro employees personally solicited purchases from Universal during visits to North Carolina, sold over $5 million in leather goods to Universal, and exchanged frequent e-mail correspondence with Universal employees regarding those transactions.

In response, Koro contends that Universal failed to make the required prima facie showing of purposeful availment because Koro did not have offices, agents, or property in North Carolina, produced all its goods in Argentina, and contractually agreed that Universal would accept delivery of goods within

12

Argentina. Koro also urges us to reject as inadmissible hearsay Kochekian's statements regarding in-person solicitations by Koro employees, which Koro's representative contradicted in opposing declarations.

At the outset, we find no merit in Koro's attempt at this stage of proceedings to discredit the facts adduced in the affidavits filed by Universal. Because the district court did not conduct an evidentiary hearing, the court was required to assume the credibility of Universal's version of the facts, and to construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to Universal. See, e.g., Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (stating that absent an evidentiary hearing, the district court "must take all disputed facts and reasonable inferences in favor of the plaintiff" in determining whether the plaintiff has met its initial burden of proof with regard to personal jurisdiction) (citing Combs, 886 F.2d at 676); O'Hare Int'l Bank v. Hampton, 437 F.2d 1173, 1176-77 (7th Cir. 1971) (accepting as true, for purposes of appeal, facts related in the plaintiff's affidavits and complaint when the parties' affidavits contained contradictory factual allegations with respect to personal jurisdiction); cf. Dowless v. Warren-Rupp Houdailles, Inc., 800 F.2d 1305, 1307-08 (4th Cir. 1986) (noting that the plaintiff "need not present evidence

13

in making a prima facie case to oppose a motion to dismiss," and that "[m]ere allegations are sufficient" to satisfy the pleading requirements for personal jurisdiction).

Given the procedural posture of this appeal, we do not evaluate the credibility of the statements in affidavits filed on Universal's behalf or address any questions regarding the ultimate admissibility of evidence, nor do we decide whether Universal has proved its contentions. Instead, we are required to determine whether Universal has made at the motion to dismiss stage a prima facie showing that Koro purposefully availed itself of the privilege of doing business in North Carolina, in satisfaction of the first prong of our jurisdictional analysis. See, e.g., Carefirst, 334 F.3d at 396 (stating that when the district court decides a pretrial motion challenging personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction); Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003) (stating that a plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction over the defendant).

We conclude that Universal sufficiently has shown such purposeful availment, and that the district court erred in reaching a contrary conclusion. Although we agree with the district court's observation that in-person business meetings

14

are not "automatically sufficient" to confer jurisdiction, such instances may not be viewed in isolation from the totality of the facts before the court. When considered as a whole, Universal's allegations and supporting affidavits describe vigorous business solicitations undertaken by Koro in North Carolina, which gave rise to a two-year relationship between the parties that spanned a series of transactions and resulted in the sale of millions of dollars in goods.

Koro argues, nevertheless, that the "clear center" of the parties' interactions was in Argentina, and analogizes this appeal to our decision in Consulting Engineers. In that case, a Virginia corporation entered into a non-disclosure agreement with an Indian corporation regarding a potential software project. 561 F.3d at 275. The non-disclosure agreement contained a choice-of-law provision requiring that Virginia law would govern the parties' agreement. Id. The Indian corporation ultimately declined to pursue the project, after a single meeting of the parties in India to discuss the proposed work, but allegedly hired an India-based employee of the Virginia corporation in violation of the non-disclosure agreement. Id. at 276.

In the ensuing lawsuit, we held that despite the parties' agreement on a choice-of-law provision requiring the application of Virginia law, the Indian corporation's contacts with Virginia

15

were "too attenuated" to support a finding of specific personal jurisdiction. Id. at 282. In addition to the fact that the defendant did not have offices, property, employees, or ongoing business in Virginia, we further observed that none of the defendant's employees had traveled to Virginia; that the defendant did not initiate contact with the plaintiff; that the only in-person meeting between the parties occurred in India; that the relevant communications between the parties consisted of four brief emails, several telephone conversations, and the exchange of draft agreements; and that the activity forming the basis of the plaintiff's complaint took place abroad. Id. at 281-82.

In contrast, the affidavits filed by Universal in the present case detail many of the factual circumstances not present in Consulting Engineers. For example, Universal's representative averred that Koro employees made "first contact" with Universal, traveled to Universal's offices in North Carolina on several occasions, conducted at least six business meetings with Universal in North Carolina that involved "continued solicitations" and "discussions . . . of the purchaser and seller relationship," and corresponded by e-mail with Universal employees on a "weekly" basis over the course of two years.

16

We have identified similar circumstances as significantly impacting the outcome of a personal jurisdiction analysis, including the fact that a defendant "initiated contact" with the plaintiff in the forum state and "repeatedly reached" into the forum state to transact business during in-person visits there. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 295 & n.17 (4th Cir. 2009) (according "special weight" to the fact that the defendant initiated contact with the plaintiff, and noting that the defendant "repeatedly reached into [the forum state] to transact business with the [defendant], invoking the benefits and protections of [forum] law"); see also Tire Eng'g, 682 F.3d at 304 (observing that the relationship between the foreign defendant and the resident plaintiff "originated" in the forum state during in-person visits by the defendant's representative). We particularly have observed in jurisdictional analysis the importance of a defendant's solicitations and in-person contact regarding the business relationship in the forum state. See Consulting Eng'rs, 561 F.3d at 278 (stating that courts should consider "whether the defendant reached into the forum state to solicit or initiate business," and "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship"); see also Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 946 (4th Cir. 1994)

17

(observing that the defendant did not purposefully avail itself of conducting business in the forum state when the defendant had not "directed [any] marketing effort or other activities" toward that state); Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 478 (4th Cir. 1993) (noting that the defendant's decision not to advertise or solicit business in the forum state weighed against a finding of minimum contacts); Fed. Ins. Co., 886 F.2d at 658-59 (concluding that the defendant did not purposefully avail itself of the privilege of conducting business in the forum state, in part because the defendants' sales of goods to residents of the forum state were initiated by the customers and because the defendants did not "directly advertise or solicit customers" or engage in "sales efforts" in the forum state); cf. Asahi Metal Indus. v. Superior Court of Cal., 480 U.S. 102, 112-13 (1987) (plurality opinion) (analyzing a defendant's purposeful availment of a forum state by examining, among other things, whether the defendant advertised or solicited business within that state).

Although the magistrate judge and the district court identified several other factors to support their respective conclusions, the considerations we have identified above sufficiently show at this stage of the proceedings that Koro initiated contact with Universal in North Carolina and, during a series of in-person solicitations and business meetings held

18

there, established significant, ongoing business dealings with Universal over a two-year period. The testimony in the affidavits regarding robust business activity within the forum state distinguishes this case from other cases in which the parties' interactions occurred "overwhelmingly abroad," Tire Eng'g, 682 F.3d at 302, and from cases in which the defendant's goods were directed at the forum state in only a "random, fortuitous, or attenuated way," ESAB Grp., 685 F.3d at 392 (citation omitted). Instead, the averments of Universal's representative portray a defendant that engaged in a course of conduct that "targeted the forum with its goods." Id. (citation and internal quotation marks omitted).

We acknowledge that certain other facts weigh in Koro's favor, including that Koro is a foreign corporation without offices, property, or employees in North Carolina, that the breaches of contract alleged in the complaint appear to have occurred abroad, and that Universal accepted delivery of the goods within Argentina. Nevertheless, we are constrained to conclude that Universal's allegations and supporting affidavits, when construed in the light most favorable to Universal, satisfy its prima facie burden of showing that Koro purposefully availed itself of the privilege of conducting business in North Carolina.

19

Because Universal satisfied at this stage of the proceedings its burden of showing Koro's purposeful availment, we conclude that the district court erred in dismissing Universal's complaint before considering the additional aspects of the jurisdictional inquiry. In reaching this conclusion, we express no opinion regarding whether Universal has satisfied its prima facie burden with respect to the additional requirements of specific personal jurisdiction that the district court did not address, including the requirement that the exercise of jurisdiction be constitutionally reasonable. See Foster v. Arletty 3 Sarl, 278 F.3d 409, 415 n.5 (4th Cir. 2002) (noting that a defendant's "purposefully established contacts, even if meeting the minimal threshold mandated by due process, must still 'be considered in light of other factors' to determine whether personal jurisdiction is appropriate") (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). And, as noted above, we do not pass judgment on the credibility of the affidavits filed by Universal's assistant manager. In its discretion, the district court may address such questions at an evidentiary hearing or at trial if the court concludes that Universal has satisfied its initial burden with respect to the remaining required elements of personal jurisdiction.

III.

For these reasons, we vacate the district court's judgment and remand the case for further proceedings consistent with the principles expressed in this opinion.

VACATED AND REMANDED
