IN THE SUPREME COURT OF NORTH CAROLINA

No. 321PA21

Filed 6 April 2023

DAVID SCHAEFFER

v.

SINGLECARE HOLDINGS, LLC, SINGLECARE SERVICES, LLC, RXSENSE HOLDINGS, LLC, RICHARD A. BATES, and DARCEY SCHOENEBECK

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA20-427, 2021 WL 2426202 (N.C. Ct. App. June 15, 2021), reversing an order entered on 22 November 2019 by Judge Susan Bray in Superior Court, Orange County. Heard in the Supreme Court on 7 February 2023.

> *Kornbluth Ginsberg Law Group, P.A., by Joseph E. Hjelt and Michael A. Kornbluth, for plaintiff-appellant.*

> *Julia C. Ambrose, Charles B. Leuin, pro hac vice, and Mark S. Eisen for defendant-appellee.*

> *Sam McGhee, Lauren O. Newton, Jennifer D. Spyker, and David G. Schiller for North Carolina Advocates for Justice, amicus curiae.*

EARLS, Justice.

It is axiomatic that "where individuals 'purposefully derive benefit' from their interstate activities . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985) (quoting *Kulko v. Cal.*

*Super. Ct.,* 436 U.S. 84, 96 (1978)). But when a defendant's conduct in a forum is not so robust as to give rise to general jurisdiction, to conclude that the defendant has "purposefully derive[d] benefit from their interstate activities," the defendant must have "purposefully directed his activities at residents of the forum . . . and the litigation [must] result[ ] from alleged injuries that arise out of or relate to those activities." *Id.* at 472–73 (cleaned up).

At its heart, this case presents the question of which of a defendant's activities matter. Defendants here—both corporate entities and individuals—take the position that, in evaluating which forums' courts may exercise specific jurisdiction with respect to claims arising from an alleged breach of an employment agreement, only activities that occurred prior to or at the time of the execution of the relevant agreements bear on the analysis. However, such a position would require a court to turn a blind eye to activities a defendant conducts in a new forum after agreements are negotiated and executed. Because this position would "allow [defendants] to escape having to account in other States for consequences" that arise from their own intentional conduct, we decline to adopt this unduly narrow approach to specific jurisdiction. *Id.* at 474. Determining whether specific jurisdiction exists does not— and has never—required a court to treat a discrete, temporally-limited set of events as dispositive to the exclusion of all other activities that occur throughout the evolution of a relationship. Instead, we consider *all* of Defendants' activities, including those that occurred after the employment agreements were executed, and

hold that Corporate Defendants intentionally reached out to North Carolina to conduct business activities in the state, and the claims at issue in this litigation arise from or are related to those activities. *See Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 307 (2020) (rejecting Business Court's specific jurisdiction analysis as "requir[ing] too strict a temporal connection between" the defendant's forum-directed contacts and the plaintiffs' claims).

## I.    Factual Background

Plaintiff David Schaeffer, a North Carolina resident, brought this action against defendants SingleCare Holdings, LLC; SingleCare Services, LLC; RxSense Holdings, LLC, Darcey Schoenebeck, and Richard A. Bates (collectively, Defendants). SingleCare Holdings, SingleCare Services, and RxSense (Corporate Defendants) are Delaware limited liability companies with their principal offices in Massachusetts. Schoenebeck and Bates (Individual Defendants) are citizens and residents of Minnesota and Massachusetts, respectively. Corporate Defendants provide pharmacy benefit management and medical benefit management services. Bates is the Chief Executive Officer of each of the Corporate Defendants and Schoenebeck is the Executive Vice President of Business Development for SingleCare services.

Schaeffer was jointly employed by SingleCare and RxSense as the Senior Vice President of Business Development for SingleCare from 1 May 2017 until his termination on 22 October 2018. On 13 June 2019, Schaeffer brought this action against Defendants, alleging various tort and contract claims arising from his

termination. Specifically, Schaeffer alleged that Defendants revoked fully vested shares that they promised Schaeffer during employment negotiations to incentivize him to accept his position. Schaeffer argues that he accepted the business development position based on Defendants' promises that he would be granted equity in SingleCare, a promise that Defendants reiterated throughout employment negotiations and during Schaeffer's employment.

Schaeffer lived in California during contract negotiations with Defendants and for the first several months of his employment. In 2018, he sought approval from Defendants to move to North Carolina, where he would continue to carry out his duties remotely.[1] According to Schaeffer, Defendants not only approved his request to move to North Carolina but helped facilitate his move. For example, Defendant Schoenebeck sent a letter to Schaeffer's North Carolina-based mortgage lender to confirm his authorization to work remotely.

After Schaeffer's move, he alleges that he "substantially performed [his work duties] in North Carolina." In his brief to this Court, he explains that he "made efforts to expand and further the Corporate Defendants' business in North Carolina," received reimbursements for work-related travel to and from North Carolina and for other expenses associated with his work in the state, and engaged in regular communications from North Carolina to carry out his sales duties. As a result of these

---

[1] Schaeffer also worked remotely during the period of his employment when he was living in California.

activities, he argues that "Corporate Defendants derived revenue from services rendered . . . in his capacity as Senior Vice President on their behalf in North Carolina."

While Schaeffer was employed by Corporate Defendants and living in North Carolina, Corporate Defendants maintained other connections to the state. For example, they employed at least three other individuals in North Carolina, solicited applicants for business development positions in various cities within the state through LinkedIn posts that highlighted SingleCare's goal of hiring sales representatives in "all major U.S. cities," and provided North Carolina consumers with pharmacy discounts. Corporate Defendants also paid Schaeffer in North Carolina, paid state taxes based on his employment, and mailed tax documents to his North Carolina address.

Schaeffer was officially terminated from his position on 22 October 2018. On 13 June 2019, he brought an action against Defendants, alleging fraud, misrepresentation, and breach of contract, among other claims. On 19 August 2020, Defendants filed Rule 12(b)(6) and Rule 12(b)(2) motions to dismiss. *See* N.C.G.S. § 1A-1, Rule 12(b)(2) and Rule 12(b)(6) (2021). Relevant here, the Rule 12(b)(2) motion argued that the trial court lacked personal jurisdiction over Defendants for nine of Schaeffer's ten claims.[2] The trial court denied the motions, and Defendants timely

---

[2] The Rule 12(b)(2) motion challenged jurisdiction only as to the first nine counts of the complaint.

appealed the denial of the Rule 12(b)(2) motion.

The Court of Appeals unanimously reversed the trial court's denial of Defendants' Rule 12(b)(2) motion in an unpublished opinion issued on 15 June 2021 and denied Schaeffer's subsequent Petition for Rehearing. The Court of Appeals concluded that Schaeffer's contacts with North Carolina that were relevant to the suit were the result of his own unilateral actions and explained that "Defendants' acquiescence with Plaintiff's move to North Carolina, and subsequent communications with Defendant in North Carolina, do not create personal jurisdiction." *Schaeffer v. SingleCare Holdings LLC*, No. COA20-427, 2021 WL 2426202, at *4 (N.C. Ct. App. June 15, 2021). The court recognized that some of Corporate Defendants' contacts with North Carolina weighed in favor of finding specific jurisdiction, including Corporate Defendants' solicitation of business and services, recruitment of employees, and operation of a third-party administrator in the state. *Schaeffer*, 2021 WL 2426202, at *4. Nonetheless, the Court of Appeals concluded that these activities "alone [were] not sufficient to establish specific jurisdiction" and held that Schaeffer's claims "[did] not arise out of, or even relate to, the alleged contacts between Defendants and North Carolina." *Schaeffer*, 2021 WL 2426202, at *5.

## II.    Analysis

### A. Standard of Review

"When the parties have submitted affidavits and other documentary evidence, a trial court reviewing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) must determine whether the plaintiff has established that jurisdiction exists by a preponderance of the evidence." *State ex rel. Stein v. E. I. du Pont de Nemours & Co.*, 382 N.C. 549, 555 (2022). "As an appellate court, we consider whether the trial court's determination regarding personal jurisdiction is supported by competent evidence in the record." *Id.* at 556.

### B. Legal Standard

It is well established that "whether a nonresident defendant is subject to personal jurisdiction in this State's courts involves a two-step analysis." *Id.* at 556. First, North Carolina's long-arm statute, N.C.G.S. § 1-75.4, must authorize a court to exercise jurisdiction. *See Beem USA Ltd.-Liab. Ltd. P'ship*, 373 N.C. at 302; N.C.G.S. § 1-75.4 (2021). This statute "make[s] available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676 (1977). Thus, the second step in the inquiry addresses the determinative issue: whether the Fourteenth Amendment's Due Process Clause permits a state court to exercise jurisdiction over a defendant. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

Due process permits a state's courts to exercise jurisdiction over an out-of-state defendant when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). Minimum contacts are established through "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Beem USA Ltd.-Liab. Ltd. P'ship*, 373 N.C. at 303 (quoting *Skinner v. Preferred Credit*, 361 N.C. 114, 133 (2006)). "In giving content to that formulation, the [U.S. Supreme] Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.' " *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017)). To demonstrate this relationship, "the plaintiff has the burden of proving that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there." *Mucha v. Wagner*, 378 N.C. 167, 171 (2021) (alteration in original) (quoting *Ford Motor Co.*, 141 S. Ct. at 1025).

Minimum contacts may give rise to one of two forms of jurisdiction: general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction requires that a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the

forum State." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 317). When a defendant's conduct in a state is not so extensive, however, jurisdiction may still be proper if "the litigation results from the alleged injuries that arise out of or relate to the defendant's activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (cleaned up). Jurisdiction that is based on this relationship is known as specific jurisdiction. Because Schaeffer asserts only that the trial court has specific jurisdiction over Defendants, our analysis is limited to this kind of personal jurisdiction.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 476 (cleaned up). These factors are:

> 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'

*Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

The purpose of the Due Process Clause's limitations on personal jurisdiction is to "treat[ ] defendants fairly," *Ford Motor Co.*, 141 S. Ct. at 1025, by providing them with "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign," allowing them to "structure their primary conduct with some

minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp.*, 471 U.S. at 472 (cleaned up) (first quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977); then quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

## C. Discussion

Applying this framework to the facts of this case, we conclude that specific jurisdiction exists over Corporate Defendants because they purposefully availed themselves of the privileges of conducting various business-related activities in North Carolina, and Schaeffer's claims arise out of or are related to those activities. [3] We further conclude that exercising jurisdiction in this case is constitutionally reasonable.

The same cannot be said for Individual Defendants, however, because Schaeffer's evidence fails to demonstrate that their conduct directed at North Carolina was sufficient to permit the trial court to exercise specific jurisdiction over them in this litigation.

### 1. Corporate Defendants

Schaeffer urges that Defendants' suit-related activities in North Carolina are sufficient to enable the trial court to exercise specific jurisdiction in this litigation.

---

[3] Note that we do not address the separate question of whether any Defendants have consented to jurisdiction in this case or whether registering to do business in North Carolina is a valid basis for personal jurisdiction under the Fourteenth Amendment.

But in Defendants' view, which was adopted by the Court of Appeals, Schaeffer's decision to move was his own unilateral choice, and "Defendants' acquiescence with Plaintiff's move to North Carolina, and subsequent communications with Defendant in North Carolina, do not create personal jurisdiction." *Schaeffer*, 2021 WL 2426202, at *4.

Defendants contend that the only relevant activities that give rise to Plaintiff's claims, such as the contract negotiations that took place between Schaeffer and Defendants and the execution of Schaeffer's employment-related agreements, occurred in another forum, and "SingleCare's contacts with Schaeffer *after* he moved to North Carolina have no bearing on the analysis." In short, Defendants argue that they did not voluntarily reach out to North Carolina to conduct suit-related activities here. Further, Defendants argue that their "contacts with North Carolina are limited and entirely unrelated to the claims at hand," meaning the activities "do not support jurisdiction . . . in North Carolina for *all employment-related suits*." But Defendants' position on both points ignores the import of Corporate Defendants' voluntary conduct in North Carolina in response to and following Schaeffer's move and misstates the character of Corporate Defendants' other North Carolina-directed activities.

First, we address whether Corporate Defendants purposefully availed themselves of the privileges of conducting business-related activities in North Carolina. It is true that the "unilateral activity of another party or a third person is

not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Defendants assert that "SingleCare *did not* reach out to a citizen of North Carolina" because Defendants recruited Schaeffer and initiated his employment when he was a resident of California and "Schaeffer unilaterally moved to North Carolina" prior to his termination. But there is no legal basis for hinging the whole of the analysis on the forum in which the relationship was established *(i.e.* California) to the exclusion of the forum in which Corporate Defendants perpetuated the relationship.

Corporate Defendants emphasize the idea that "SingleCare created a . . . relationship with Schaeffer well *before* he moved to North Carolina" or "before SingleCare even knew Schaeffer would move to North Carolina." In Defendants' view then, there seems to be only *one* forum in which specific jurisdiction might exist—the forum in which the relationship was established. Under this approach, so long as Schaeffer's move was his own decision, there are very few subsequent activities Corporate Defendants could conduct in a new forum that would allow the new forum's courts to exercise jurisdiction over the claims at issue here. For example, Defendants could continue to employ Schaeffer in North Carolina for the next twenty years. Shaeffer could continue to grow Defendants' business in the state, and representatives of the company could visit him regularly to oversee his work. But because Defendants initially "reach[ed] out" to Schaeffer when he was a resident of

California, none of those details would matter, even if Schaeffer's presence and work in North Carolina far exceeded any of his activities in California. Though the forum in which a contractual relationship began is certainly relevant in determining where jurisdiction is proper, it is not the only event that is pertinent to this analysis.

Indeed, the U.S. Supreme Court "long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests or on 'conceptualistic theories of the place of contracting or of performance.' " *Burger King Corp.*, 471 U.S. at 478–79 (cleaned up) (first quoting *Int'l Shoe Co.,* 326 U.S. at 319; then quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316 (1943)). And though "prior negotiations" and "contemplated future consequences" are relevant "in determining whether the defendant purposefully established minimum contacts with the forum," so too is "the parties' actual course of dealing." *Id.* at 479.

*Burger King* demonstrates that the purposeful availment inquiry is a "flexible" one. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014). As the Fourth Circuit has recognized, it "depends on a number of factors" that should be considered "on a case-by-case basis." *Id.* Relevant here,

> [i]n the business context, those factors include, *but are not limited to*, an evaluation of: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person

> contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Id.* (emphasis added) (cleaned up). Defendants would have us forgo this flexible analysis and establish a rigid, per se rule that touches on few of these factors. Such an approach ignores decades of case law from both this Court and the U.S. Supreme Court that evaluates a range of activities to determine whether a defendant intentionally reached out to the forum state, and it would subvert the purpose of the protections afforded by personal jurisdiction doctrine. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 479–82; *World-Wide Volkswagen Corp.*, 444 U.S. at 295–98; *Int'l Shoe Co.*, 326 U.S. at 319–20; *Mucha*, 378 N.C. at 172–73; *Beem USA Ltd-Liab. Ltd. P'shp*, 373 N.C. at 306; *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 367 (1986).

Rather, as described above, to determine whether personal jurisdiction exists, we examine the totality of the circumstances that this case presents. In response to Schaeffer's decision to move, Corporate Defendants purposefully availed themselves of the privilege of conducting business in North Carolina, voluntarily engaging in a wide range of activities within the state.

The crux of the purposeful availment analysis is whether a defendant " 'reached out beyond' its home—by, for example, 'exploit[ing] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The contacts cannot

simply be "random, isolated, or fortuitous[,]" *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984), and they must be such that the defendant has "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King Corp.*, 471 U.S. at 472 (cleaned up). In short, the defendant's contacts with the forum state must be voluntary, and it must be foreseeable that the defendant could be hailed to court in that particular forum as a consequence.

Here, Defendants first approved Schaeffer's request to move to North Carolina where he would continue to carry out his work remotely. After approving Schaeffer's request to move, Schaeffer explains in his brief that Defendants "helped him purchase a house in North Carolina" by sending a letter to his "North Carolina mortgage lender in order to facilitate [his] move to the state." These activities are not, without more, enough to conclude that Corporate Defendants purposefully availed themselves of the North Carolina market. But they demonstrate that Corporate Defendants supported the transition, which becomes more significant in light of their subsequent North Carolina-targeted activities.

Once Schaeffer moved to North Carolina, Corporate Defendants paid state taxes based upon his work here, mailed tax documents to his North Carolina address, and paid him in the state. Defendants communicated frequently with Schaeffer through phone calls and emails as part of his employment and reimbursed him for expenses he incurred as a result of working in North Carolina, including for travel to and from the state and office maintenance costs. Based on business directives

Defendants issued, Schaeffer argues that "[he] furthered Defendants' pharmacy benefit management business and pharmaceutical benefit card services in North Carolina, which were targeted at North Carolina businesses and residents." For example, as part of his North Carolina-focused work and operating under the instructions of Defendants, Schaeffer sold services related to a third-party administrator—Towers Administrators LLC—that is both licensed in North Carolina and wholly owned by Corporate Defendants.[4] Due to his efforts, "Corporate Defendants derived revenue from services rendered by Schaeffer in his capacity as Senior Vice President on their behalf in North Carolina." Finally, Corporate Defendants terminated Schaeffer with the knowledge that he was a North Carolina-based employee.

These actions demonstrate that Corporate Defendants voluntarily and knowingly engaged with a North Carolina-based employee to support and expand his work in the state. Due to their own directives, Corporate Defendants reaped the business benefits of work that Schaeffer conducted in North Carolina. This work was, at least in part, targeted at the North Carolina market. Based on the extent of the communications and the various forms of support Corporate Defendants voluntarily provided Schaeffer to enable his work in North Carolina coupled with the profits and other benefits Corporate Defendants expected to gain as a result of that support,

---

[4] Towers Administrators LLC holds itself out as "SingleCare Administrators" and is described on SingleCare's website as its "licensed discount medical plan organization."

Corporate Defendants' activities in North Carolina were also sufficient to provide them with ample notice that they may be subject to suit in the state.[5]

On top of its activities in North Carolina as a result of employing Schaeffer, Corporate Defendants voluntarily conduct many other activities in the state that would fairly put them on notice of the possibility that litigation might arise in the forum. Corporate Defendants employed at least three other individuals in North Carolina, one of whom was a sales representative, and solicited candidates from around the state for business development roles. Schaeffer argues that the positions Corporate Defendants advertised in North Carolina "shared the same underlying goal and responsibility held by Schaeffer: to 'help drive growth' in SingleCare." Further, SingleCare intentionally serves North Carolina consumers by providing them "with access to pharmacy discounts at retail locations across the state, including major grocery stores such as Harris Teeter, CVS, Walgreens, and Walmart."[6]

---

[5] *See, e.g. Burger King Corp.*, 471 U.S. at 473–74 ("[W]here individuals 'purposefully derive benefit' from their interstate activities . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." (quoting *Kulko v. Cal. Super. Ct.,* 436 U.S. 84, 96 (1978))).

[6] In framing the California-directed activities as the only relevant events in the purposeful availment analysis, Defendants ignore their North Carolina-directed activities, brushing them off as irrelevant because they occurred after the employment relationship initially formed. As part of this error, Defendants muddle the distinction between the purposeful availment inquiry and the relatedness inquiry. For example, as part of their purposeful availment analysis, they assert that "[w]ithout soliciting a relationship with a North Carolina resident and the forum itself, there is no connection between the contracts at issue and this forum." At this point in the analysis, however, the task is to evaluate "the nature and extent of 'the defendant's relationship to the forum State.' " *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Bristol-Myers Squibb Co.,* 582 U.S. at 262). Whether there is a

Schaeffer's claims further arise out of *and* are related to Corporate Defendants' activities in North Carolina. *See Ford Motor Co.*, 141 S. Ct. at 1026. Schaeffer's claims stem from an employment relationship that was partially carried out and allegedly breached in North Carolina. Though the alleged promises that are the basis for the claims were originally made in California, Schaeffer continued to act on Corporate Defendants' behalf in North Carolina based on those promises. The promises were then broken in North Carolina when Corporate Defendants reclaimed the shares they had allegedly granted Schaeffer, which is the event that gave rise to Schaeffer's claims. To be precise, the claims *arise from*, or were caused by, Corporate Defendants' revocation of the shares. *See id.* at 1026 (explaining that the "arise from" language in this standard "asks about causation").

Additionally, other activities conducted by Corporate Defendants are related to Schaeffer's claims. Corporate Defendants supported Schaeffer's employment-related needs and business efforts in North Carolina, directed Schaeffer to carry out certain activities directed at the North Carolina market on their behalf, and they terminated him when he was a North Carolina resident. It is one thing for Defendants to argue that these activities are not sufficient to conclude that Corporate Defendants *purposefully availed* themselves of the benefits of doing business in North Carolina

---

connection between the at-issue contacts and North Carolina is a separate question that does not bear on whether the "quality and nature" of Corporate Defendants' contacts are sufficient to trigger specific jurisdiction. *Int'l Shoe Co.*, 326 U.S. at 319.

so as to establish minimum contacts—an argument that we have already rejected—but there is simply no basis in law or logic to conclude that Schaeffer's claims are not *related* to these activities.

The U.S. Supreme Court's decision in *Ford Motor Co.* supports this result. *Ford Motor Co.* consolidated two product liability cases that arose after Ford-manufactured cars malfunctioned, injuring individuals in the cars when the vehicles crashed. 141 S. Ct. at 1023. The accidents occurred in the states where the suits were brought, the victims were residents of those states, and "Ford did substantial business in" both states. *Id.* at 1022. Ford sought to dismiss the suits for lack of personal jurisdiction, arguing that the state courts "had jurisdiction only if the company's conduct in the State had given rise to the plaintiff's claims. And that causal link existed . . . only if the company had designed, manufactured, or—most likely—sold in the State the particular vehicle involved in the accident." *Id.* at 1023. The U.S. Supreme Court rejected this argument, highlighting that jurisdiction can be established when a plaintiff's claims arise from *or* are related to a defendant's activities in the relevant forum. *Id.* at 1026. Applying this distinction, the Court held that the plaintiffs' claims were related to Ford's activities in their states, meaning the " 'relationship among the defendant, the forum[s], and the litigation'—[was] close enough to support specific jurisdiction." *Id.* at 1032 (first alteration in original) (quoting *Walden,* 571 U.S. at 284).

Applying *Ford Motor Co.* to the facts of this case, just as jurisdiction there was not limited "to where the car was designed, manufactured, or first sold," 141 S. Ct. at 1028, jurisdiction here is not limited to where Schaeffer was first recruited or where his contract was negotiated and executed. In *Ford Motor Co.,* the Court recognized that "Ford sold the specific products [that malfunctioned] in other states," but it explained that the plaintiffs' claims were related to Ford's activities anyway because "the plaintiffs [were] residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States." *Id.* at 1031. Here, Schaeffer was a resident of North Carolina, he carried out his employment obligations in North Carolina based on both directives from Corporate Defendants and promises Corporate Defendants allegedly made to him, and he claims he suffered an injury in North Carolina when Corporate Defendants allegedly broke those promises. There is a clear connection between Corporate Defendants' activities in North Carolina—some of which were conducted by Corporate Defendants themselves to accommodate and support Shaeffer's remote work in North Carolina while others were conducted by Schaeffer at Corporate Defendants' behest for their own benefit—and Schaeffer's claims in this litigation. This conclusion "is faithful to the United States Supreme Court's characterization of specific jurisdiction as being based on 'case-linked' contacts." *Beem USA Ltd.-Liab. Ltd. P'ship*, 373 N.C. at 307.

To distort this straightforward analysis, Defendants again frame their recruitment of Schaeffer and execution of his employment-related agreements—activities that were completed in California—as their only relevant activities with respect to Schaeffer's claims. Through this narrow lens, Defendants assert that "Schaeffer seeks to relitigate alleged representations made to him, and agreements entered into, in California, and that have nothing whatsoever to do with North Carolina or [Defendants'] alleged North Carolina contacts. The only connection between the claims at issue and this forum is Schaeffer's unilateral decision to relocate to North Carolina." This contention mischaracterizes Corporate Defendants' activities in North Carolina as described above, and incorrectly focuses on a limited set of events during the parties' relationship to the exclusion of other relevant considerations. As discussed, conduct that occurred in North Carolina following the formation of the relationship between Schaeffer and Corporate Defendants is pertinent to this analysis as well.

Not only have Defendants purposefully established minimum contacts in North Carolina that arise out of and are related to Schaeffer's claims, but personal jurisdiction is also constitutionally reasonable in that "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320). Most significantly, Corporate Defendants already independently conduct extensive activities in North Carolina apart from any activities they conducted in the state that were related to

Schaeffer. What is more, Defendants have not challenged the trial court's jurisdiction as to one of Schaeffer's claims, so they are already subject to litigation in North Carolina in this very matter. As a result, there is virtually no burden on Corporate Defendants in litigating the additional claims in this state. Further, litigating all of the claims against Corporate Defendants in North Carolina preserves judicial resources, thereby promoting the interstate judicial system's interest in obtaining an efficient resolution of the case by consolidating the claims within a single court. Finally, contrary to the Court of Appeals' conclusion that "North Carolina has minimal interest in a contract negotiated outside of this State, formed between non-resident parties, and substantially performed outside of this State," *Schaeffer*, 2021 WL 2426202, at *5, North Carolina has a " 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 367 (citing *Burger King Corp.*, 471 U.S. at 473). All told, Corporate Defendants have established "minimum contacts with [North Carolina] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (cleaned up).

### 2. *Individual Defendants*

Importantly, foreign corporate officers, directors, or representatives are not subjected to jurisdiction simply because their employer-corporation is subject to suit in a particular forum. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Petitioners[']

. . . contacts with California are not to be judged according to their employer's activities there."); *see also Robbins v. Ingham*, 179 N.C. App. 764, 771 (2006) (" '[P]laintiffs may not assert jurisdiction over a corporate agent without some affirmative act committed in his individual *official* capacity.' ") (emphasis added) (quoting *Godwin v. Walls*, 118 N.C. App. 341, 348, *disc. review allowed*, 341 N.C. 419 (1995)). Imputing a corporation's contacts to individuals employed by the corporation would ignore that specific jurisdiction turns on "the relationship between the *defendant*, the forum, and the litigation." *Mucha v. Wagner*, 378 N.C. 167, 174 (2021) (emphasis added) (cleaned up). Nevertheless, we do not conclude that any foreign corporate representative acting solely within their official capacity is shielded from jurisdiction, as such a blanket rule would itself risk ignoring the forum-directed activities of the individual defendant. But "more than mere participation in the affairs of the corporation is required." *King v. Prodea Sys., Inc.*, 433 F. Supp. 3d 7, 16 (D. Mass. 2019) (cleaned up). We instead conduct the same minimum contacts test for Individual Defendants as we have for Corporate Defendants. With respect to the relatedness inquiry, one particularly relevant consideration is whether Individual Defendants were "primary participants in the alleged wrongdoing intentionally directed at a [North Carolina] resident." *Calder*, 465 at 790.

Schaeffer's pleadings and affidavit do not provide a factual basis to conclude that Individual Defendants themselves engaged in sufficient activities giving rise to or related to the subject matter of the claims to be subjected to jurisdiction in North

Carolina courts. Though Schaeffer's affidavit alleges, among other minor activities, that Defendant Schoenebeck "participated in [his] termination" and "[he] believes that" he was terminated "at the direction of Defendant Bates," Schaeffer does not make sufficiently specific allegations regarding the North Carolina-directed activities Individual Defendants themselves engaged in or the connection between those activities and his claims, such as by alleging their individual roles in bringing about the injuries he suffered. For example, while it might be the case that Defendant Schoenebeck *participated* in his termination, she may have had nothing to do with the decision to terminate him and did not necessarily know that his shares were being revoked. Without more, these general allegations are insufficient to conclude that the exercise of personal jurisdiction is appropriate as to Individual Defendants.

## III.    Conclusion

Personal jurisdiction doctrine has necessarily evolved over time to account for "the fundamental transformation of our national economy." *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 704 (1974). "Today[,] many commercial transactions touch two or more States and may involve parties separated by the full continent." *Id.* In the same vein, as technological innovation flourishes, remote work has become increasingly common. In the face of these advances, courts must balance the importance of a foreign defendant's "liberty interest in not being subject to the binding judgments of a forum in which he has established no meaningful contacts, ties, or relations," with the reality that such contacts are more easily and more widely cultivated today. *See*

*Burger King Corp.,* 471 U.S. at 471–72 (cleaned up). Indeed, "because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Id.* at 473–74 (cleaned up).

Though our rapidly changing world has perhaps made it easier to hold foreign defendants to account for alleged wrongdoings in a variety of forums, our decision today breaks no new ground. It simply analyzes the whole of Schaeffer's relationship with Defendants, rather than focusing only on a narrow and discrete set of events. Because Corporate Defendants purposefully availed themselves of the privileges of conducting various business-related activities in North Carolina and those activities arise from or relate to Schaeffer's claims in this litigation, we hold that the trial court may exercise personal jurisdiction over Corporate Defendants pursuant to the Due Process Clause. Accordingly, we reverse the Court of Appeals decision in this case as to Corporate Defendants, affirm its decision with respect to Individual Defendants, and remand to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART.